**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America, Criminal No. 02-85(1) (DWF/RLE)

Plaintiff,

v. **ORDER AND MEMORANDUM**

Carol Louise Gillmore,

Defendant.

---

Clifford B. Wardlaw, Assistant United States Attorney, United States Attorney's Office, counsel for Plaintiff.

Paul C. Engh, Esq., Engh Law Office, counsel for Defendant.

---

This matter is before the Court upon Defendant's objections to Magistrate Judge Raymond L. Erickson's Report and Recommendation dated August 1, 2005, recommending that Defendant's motion to suppress evidence of search and seizure be denied and that Defendant's motion to suppress evidence of statements be denied.

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c).

Based upon the *de novo* review of the record and all of the arguments and submissions of the parties and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. Defendant Carol Louise Gillmore's objections (Doc. No. 68) to Magistrate Judge Raymond L. Erickson's Report and Recommendation dated August 1, 2005, are **DENIED**.

2. Magistrate Judge Raymond L. Erickson's Report and Recommendation dated August 1, 2005 (Doc. No. 67), is **ADOPTED** consistent with the reasons set forth in the attached Memorandum.

3. Defendant Carol Louise Gillmore's motion to suppress evidence of search and seizure (Doc. No. 54) is **DENIED**.

4. Defendant Carol Louise Gillmore's motion to suppress evidence of statements (Doc. No. 55) is **DENIED**.

Dated: October 18, 2005

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

**MEMORANDUM**

**A. The First Interrogation - February 14, 2002**

Defendant asserts that she was in custody during her first interview on February 14, 2002. Defendant is correct in asserting that custody is a word that does not apply exclusively to a formal arrest, but rather encompasses whether a defendant is deprived of his or her freedom of movement in any significant way. *California v. Beheler*, 463 U.S. 1121, 1125 (1983); *United States v. McKinney*, 88 F.3d 551, 553 (8th Cir. 1996).

Whether an accused was subjected to custodial interrogation is to be determined from the totality of the circumstances. *United States v. Hanson*, 237 F.3d 961, 963 (8th Cir. 2001); *California v. Beheler*, 463 U.S. 1121, 1125 (1983). In determining whether a suspect is "in custody," we examine whether the extent of the physical or psychological restraints that were imposed upon the defendant during an interrogation by law enforcement would have been understood by a "reasonable person in the [defendant's] position" as being consonant with the condition of being in custody. *Berkemer v. McCarty*, *supra* at 442; *United States v. Cates*, 251 F.3d 1164, 1166 (8th Cir. 2001); *United States v. Carter*, 884 F.2d 368, 370 (8th Cir. 1989). As the Court in *United States v. Griffin*, 922 F.2d 1343, 1357 (8th Cir. 1990), stated: "If [the defendant] believed his freedom of action had been curtailed to a 'degree associated with formal arrest,' and that belief was reasonable from an objective viewpoint, then [the defendant] was being held in custody during the interrogation." *See also Stansbury v. California*, *supra* at 1529; *United States v. Chamberlain*, 163 F.3d 499, 503 (8th Cir. 1998).

Under the law of this Circuit, the relevant factors to be considered in making a determination of custody include an accused's freedom to leave the scene, and the purpose, place, and length of the interrogation. *See United States v. Griffin*, *supra* at 1349. The most comprehensive list of factors–although admittedly not exhaustive–was enumerated, as follows, in *United States v. Griffin*, *supra* at 1349:

> [The] inquiry into the indicia of custody has generally focused on an examination of (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed

> during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

The Court has regarded the first three of the *Griffin* factors as mitigative in their effect upon the ultimate determination, for the presence, during questioning, of one or more of those factors would tend to weigh against a finding of custody. On the other hand, the remaining three factors have been characterized as coercive in their effect because those factors would tend to accentuate the existence of custody. A "finding of custody does not, however, have to be supported by all six factors." *United States v. Galceran*, 301 F.3d 927, 930 (8th Cir. 2002), citing *United States v. Griffin*, *supra* at 1349; *see also United States v. McKinney*, 88 F.3d 551, 554 (8th Cir. 1996).

The Court concurs in the legal analysis of Chief Magistrate Judge Raymond L. Erickson in his Report and Recommendation. Significantly, the interview not only occurred at the shelter where Defendant was staying, but Defendant was with her advocate, Mary Parkhurst, at all times on February 14, 2002. At no time was Mary Parkhurst asked to leave by law enforcement officials. At no time did Defendant ask to talk to her advocate, complain to her advocate, or request medical care. The presence of Defendant's advocate and the absence of any inquiry by Defendant to her advocate belie the notion that strong-arm tactics were used in questioning Defendant or that she was in some way deprived of medical attention.

For these reasons, and given the totality of the circumstances established by the record, the Court denies Defendant's motion to suppress her statement of February 14, 2002.

**B. Second Statement - February 15, 2002**

The Court concludes, as Chief Magistrate Judge Erickson did, that the delay between Defendant's arrest and her appearance before the Magistrate Judge was not unreasonable, given the totality of the circumstances. The time of the appearance was determined by the Magistrate Judge, not Agent Egelhof. The record again belies the notion that the delay was for the purpose of interrogating Defendant without a lawyer present. Further, this Court concludes, as Chief Magistrate Judge Erickson did, that Defendant's statement of February 15, 2002, was a knowing and voluntary act on her part. Confirmation that Defendant understood her *Miranda* rights is the fact that she invoked them in order to terminate the interview. There is no evidence in the record to suggest that Defendant's statement was anything other than knowing and voluntary.

For these reasons, the Court has denied Defendant's motion to suppress the second statement.

**Conclusion**

The Court denies Defendant's motion to suppress the statements in question. In so doing, the Court finds that Defendant's constitutional rights were not violated because her statements were knowingly and voluntarily made. The Court's conclusions are not intended to suggest that federal law enforcement officers utilize superior or more effective methods than state law enforcement officers when it comes to taking statements from defendants. For 21 years, the undersigned has observed the effective and constitutional use of video and audio recordings of statements. Rarely, if ever, have such techniques interfered with the role of law enforcement and the investigation of all types of serious crime. In fact, no one can doubt that in the large majority of cases, utilization of such audiotaped and videotaped statements result in fewer trials and more favorable pleas to prosecuting authorities.

As this Court has observed in prior cases, juries look with a jaundiced eye upon law enforcement officials who get into a "he said, she said" battle involving critical statements made by defendants. Many jurors have inquired over the years as to why statements are not taped to remove all reasonable doubt from the circumstances surrounding the statement. In any event, long before *State v. Scales*, 518 N.W.2d 587 (Minn. 1994), many state law enforcement officials taped all statements obtained from defendants. The Court observes that it has rarely been involved in a trial where the presence of a taped statement has worked to the prejudice or disadvantage of the prosecuting authority. Conversely, the Court has heard a number of cases in which the absence of a taped statement has made the case more difficult to prosecute.

Although the presence or absence of a taped statement may well affect what cases go to trial and how they are tried, the presence or absence of taping rarely has constitutional significance. Such is the case here. The absence of the video recorder or tape recorder does not render the statements given by Defendant constitutionally inadmissible.

For the reasons stated, the Court has denied Defendant’s motion to suppress Defendant’s statements.

D.W.F.